STATE of Wisconsin EX REL. SANDRA D., Relator-Appellant,

v.

Dr. Carl GETTO, Medical Director, University of Wisconsin Hospital & Clinics, or Dr. Warren Olson, Designee, Respondents-Respondents. [Case No. 92–1105.]

IN the MATTER OF the GUARDIANSHIP & PROTECTIVE PLACEMENT OF SANDRA D.:

SANDRA D., Appellant

v.

COUNTY OF DANE, Respondent. [Case No. 92–1862.]

Court of Appeals

*Nos. 92–1105, 92–1862. Submitted on briefs November 24, 1992.—Decided March 25, 1993.*

(Also reported in 498 N.W.2d 892.)

491

For the appellant the cause was submitted on the briefs of *Suzanne Hagopian* and *Keith A. Findley,* assistant state public defenders, of Madison.

For the respondents the cause was submitted on the brief of *Cal W. Kornstedt,* corporation counsel, and *Arnold N. Rusky,* assistant corporation counsel, of Dane County Corporation Counsel.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.    Sandra D. appeals from a protective placement order and an order denying her petition for a writ of habeas corpus. While she raises several issues, we consider one to be dispositive: Did the trial court lack competency[1] to proceed with the final hearing on the petition for protective placement after expiration of the thirty-day limitation in sec. 55.06(11)(c), Stats. Because we conclude that it did, we reverse.

The issue is one of law—applying statutory requirements to undisputed facts—which we review independently. *Ball v. District No. 4, Area Board,* 117 Wis. 2d

---

[1] Where the court has jurisdiction over the persons involved and the subject matter of the proceeding but for other reasons lacks the power to render a valid judgment, the supreme court has described that inability as a "lack of competency" to proceed. *See Mueller v. Brunn,* 105 Wis. 2d 171, 176-78, 313 N.W.2d 790, 792-93 (1982).

529, 537, 345 N.W.2d 389, 394 (1984). We begin by setting forth the various statutory requirements for protective placements—requirements stating explicit time requirements for the necessary hearings along the way.

■

Generally, social service agencies and certain others may petition the circuit court to provide protective placement for persons whose physical or mental disabilities require the services that can only be provided by such a placement. Section 55.06(2), Stats. The process contemplates examinations and hearings to consider whether the person meets the statutory criteria for placement. There also are provisions for taking persons into temporary custody where it "appears probable that [the] individual will suffer irreparable injury or death or will present a substantial risk of serious physical harm to others" as a result of his or her disability or incapacity "if not immediately placed" in protective care. Section 55.06(11)(a).

■

In such instances, the person is taken into custody upon a "statement" made by a sheriff, police officer, guardian or representative of a social services agency setting forth the factual basis for the emergency placement. Section 55.06(11)(a), Stats. Upon detention, a petition for permanent protective placement must be filed and a preliminary hearing held within seventy-two hours to determine whether there is probable cause to believe the person meets the general placement criteria under sec. 55.06(2). Section 55.06(11)(b). Then, if probable cause is found, "*the court may order temporary placement up to 30 days pending the hearing for a permanent placement. . ..*" Section 55.06(11)(c). The issue in this case is whether the agency's failure to hold the hearing for permanent placement within thirty days of

the probable cause finding requires dismissal of the proceedings.

The material facts of Sandra D.'s detention are not in dispute. In August 1991, mental commitment proceedings were commenced against her, resulting in a stipulated settlement agreement. On November 19, 1991, she was alleged to have violated the terms of the agreement and was ordered detained at University of Wisconsin Hospitals in Madison. The statutes governing mental commitments require that when a person is so detained, the court must hold "a final hearing" on the commitment "within 14 days from the time of detention." Section 51.20(8)(bm), Stats. In Sandra D.'s case a final hearing had been scheduled on the fourteenth day. It was never held, however, for when the doctors at the hospital failed to deliver their reports to Sandra D.'s counsel in advance of the hearing, as required by sec. 51.20(10)(b),[2] the court dismissed the proceeding. On the same day, Dr. Warren Olson of the UW Hospitals filed a statement of emergency detention, which had the effect of continuing Sandra D.'s detention at the hospital while the commitment proceedings started all over again.

■

As in protective placement proceedings under ch. 55, when an emergency detention statement is filed and the person is detained, a probable cause hearing must be held within seventy-two hours and, if cause is found, a final hearing within fourteen days thereafter. Section 51.20(8)(bm), Stats. At probable cause hearings under the mental commitment law, if the court commissioner

---

[2] In *State ex rel. Lockman v. Gerhardstein*, 107 Wis. 2d 325, 330, 320 N.W.2d 27, 30 (Ct. App. 1982), we held that the fourteen-day time limit under sec. 51.20(7)(c), Stats. (then sec. 51.20 (8)(c), Stats.) was mandatory and that failure to hold the hearing within the prescribed time was fatal to the proceedings.

finds probable cause to believe the allegations of the petition are true, the proceedings continue and a final hearing is scheduled within fourteen days. Section 51.20(7)(c). Alternatively, the commissioner may find probable cause to believe the person "is a fit subject for . . . protective placement." Section 51.20(7)(d). If such a finding is made, the commissioner may order temporary placement "for a period not to exceed 30 days," and the proceeding continues as one for protective placement under ch. 55. *Id.*

In this case, Sandra D.'s probable cause hearing was held on December 4, 1991. At the hearing, the court commissioner proceeded under sec. 51.20(7)(d), Stats., effectively converting the proceeding into one for protective placement and ordering Sandra D. temporarily detained at University Hospitals for thirty days. A formal protective placement petition was filed shortly thereafter, and a final hearing was scheduled for January 2, 1992. On the day of the hearing, Sandra D.'s counsel moved to dismiss on grounds that she had not received the medical reports at least ninety-six hours beforehand, as required by sec. 880.33(2)(a)1, Stats. Because that procedural defect could not be corrected before expiration of the thirty-day time limit for final hearings under sec. 55.06(11)(c), Stats., the trial court once again dismissed the proceeding.

Dr. Olson immediately filed another emergency detention statement under the mental commitment law, alleging the same facts as before, and Sandra D.'s involuntary temporary detention was continued as petitions were refiled and the proceedings began once again. At the probable cause hearing the court commissioner again converted the commitment proceeding into a ch. 55 protective placement proceeding and (again) ordered Sandra D. temporarily detained at University Hospitals for

thirty days, pending a final hearing scheduled for January 22, 1991.

By this time—January 8, 1992—Sandra D. had been temporarily detained at the hospital since November 19, 1991, and she sought a writ of *habeas corpus,* which was denied by the trial court on January 16th. On January 21 and 22, the final hearing on the petitions for guardianship and protective placement were held and the petitions were granted. Sandra D. appeals both the order denying her *habeas corpus* petition and the order for protective placement.

There is no question that Sandra D. was detained without a final hearing far in excess of the fourteen-day requirement of sec. 51.20(8)(bm), Stats., and the thirty-day requirement of sec. 55.06(11)(c), Stats. Dane County does not dispute this. Nor does it argue that on at least those two occasions the trial court lost competency to proceed because of those delays. It contends, however, that despite what it says are the "regrettable" circumstances of the case, we should disregard its failure to meet the statutory time limits because: (1) the physicians' delays were beyond the county's control; and (2) Sandra D. needed to be in protective placement during all the time she was detained, and "[h]ad her condition sufficiently improved at any time, she would . . . have been released from detention . . .."

It is a difficult situation; and we appreciate the county's concern that releasing Sandra D. under the medical facts of the case might have engendered a threat to her welfare. We note in this regard, however, that it is the very people who were most aware of that threat—the physicians at University Hospitals—who failed to submit the required reports in a time and manner plainly required by law. And as much as we may sympathize with the county's position and the difficulties that are

apparent on the facts of the case, we cannot ignore that law.

As we said in *In Matter of Guardianship of N.N.*, 140 Wis. 2d 64, 69, 409 N.W.2d 388, 390-91 (Ct. App. 1987):

> Temporary placement under ch. 55, Stats., is an involuntary restraint on the individual's freedom. Construing sec. 55.06(11)(c) as directory, thus allowing both the hearing and the proposed ward's "temporary" detention to continue indefinitely, would be both cruel and injurious. One who is incarcerated and deprived of her freedom pending a final hearing on her status suffers substantial injury. We conclude that sec. 55.06(11)(c) requires the final hearing to be held within thirty days of the probable cause hearing and that the trial court . . . lacks authority to enlarge that time limit or extend the temporary placement beyond it.

Here, of course, the court did not attempt to enlarge or extend the statutory time limits; in each prior instance, it dismissed the proceedings for the county's failure to meet those deadlines.

But the fact remains that because those dismissals were without prejudice, the county was able to reinstate the dismissed proceedings twice by refiling the former detention statements and petitions without ever releasing Sandra D. from custody. By so doing they were able, in each instance, to "buy[ ] a fresh 30 days," as Sandra D. suggests, while she remained involuntarily detained at the institution. And if this can be done three times, as it was here, why not four or five, or seven or eight? By the refilings, Sandra D.'s "temporary" detention which is limited by law to thirty days without a final hearing became sixty-three days. In the next case it could become eighty-three, or a hundred, or three hundred.

The county suggests no limits: it asks us, in effect, to share its view that we must ignore the law because it is not in Sandra D.'s or the public's interest to order her release.

It may be, as the court ultimately found, that Sandra D. was and remains a fit subject for protective placement. But the next respondent in a commitment or placement proceeding who is similarly deprived of his or her liberty for twice—or three or four times—the thirty-day limit may not be. Either the law is applied to every one or to no one.

Sandra D.'s interest in freedom from involuntary detention is plainly an interest protected by the right to due process of law. *State ex rel. B.S.L. v. Lee,* 115 Wis. 2d 615, 621, 340 N.W.2d 568, 570 (Ct. App. 1983). The county points out that we also said in *B.S.L.* that the individual subject to commitment in that case did not have a legitimate expectation to be discharged when the first ch. 51 proceeding was dismissed because no language in the statute prohibits initiation of a second commitment proceeding on the heels of the first. In this case, however, there were three commitment/placement proceedings filed on the heels of each other—after dismissals in each instance for the failure of those professionals seeking Sandra D.'s placement to comply with the statutes plainly requiring them to file the reports backing up their assertions. The result for Sandra D. was a continuous commitment for more than double the maximum statutory period. Even if no specific language in ch. 55 prohibits successive reinstatement of dismissed petitions, the constitution requires that a line be drawn at some point. We believe that point was reached and passed in this case.

In *Lessard v. Schmidt*, 349 F. Supp. 1078 (E.D. Wis. 1972), *vacated and remanded on procedural grounds*, 414 U.S. 473 (1974), *judgment reentered*, 379 F. Supp. 1376 (1974), *vacated and remanded on procedural grounds*, 421 U.S. 957 (1975), *judgment reentered*, 413 F. Supp. 1318 (1976), Wisconsin's civil commitment law was held unconstitutional on due process grounds because of the lack of reasonable limitations on the time that could elapse between the probable cause hearing and the final hearing in such proceedings. In response, the legislature established specific time limitations for final hearings in both chs. 51 and 55. *See State ex rel. Watts v. Combined Community Services Bd.*, 122 Wis. 2d 65, 72, 362 N.W.2d 104, 108 (1985). To allow the county to proceed, not once—not even twice, but three times—on the same facts while holding Sandra D. in "temporary" emergency custody crosses any reasonable constitutional line and, however "regrettable" the result, to use the county's words, we see no alternative but to follow the plain dictates of the statute.

In dismissing the second proceeding, the trial court concluded that there had been an abuse of process when Sandra D. was subjected to a third (continued) emergency detention following the second dismissal. In *B.S.L.*, we rejected the petitioner's argument that allowing the filing of a second commitment proceeding after dismissal of the first abused the commitment process. We recognized, however, that "[a]ny initial proceeding may be dismissed with prejudice if the trial court believes the process is being abused." *B.S.L.*, 115 Wis. 2d at 622, 340 N.W.2d at 571. In this case, however, the trial court believed the abuse was "cured" by the court commissioner's finding of probable cause after commencement of the subsequent proceeding. We think that

conclusion does not comport with the law and thus was an "erroneous exercise of discretion." *Brookfield v. Milwaukee Sewerage Dist.*, 171 Wis. 2d 400, 423, 491 N.W.2d 484, 493 (1992).

In *Lessard*, the court noted that probable cause hearings do not provide due process to one confined beyond the maximum allowable period of time: "[T]he preliminary hearing, concluded upon a showing of probable cause for believing the patient is in need of commitment within the constitutionally required sense of that definition, does not justify a prolonged period of confinement without a full hearing on the necessity of continued confinement." 349 F. Supp. at 1092 (footnote omitted).

We agree. The statute does not allow continued, multiple periods of detention upon repeated assurances that probable cause exists for the subject's temporary, emergency detention. Once probable cause for the temporary emergency detention is established, the statute *then* requires that a final hearing on the merits of the petition be held, and the proceedings brought to conclusion, within thirty days. The trial court correctly concluded that the emergency protective placement process was abused when the county continued Sandra D.'s detention while it filed its third petition on the same facts after dismissal of the previous two filings. We agree with the *Lessard* court that such an abuse could not be corrected by a subsequent probable cause hearing.

We conclude, therefore, that Sandra D.'s continued temporary detention under the facts of this case denied her due process of law, and that her motion to dismiss the third proceeding with prejudice should have been granted.

It may not be a very desirable result, given the substance of the county's evidence at the final hearing in this matter, for any subsequent proceedings will have to be based on "new" facts. But we must decide in this case whether the plain statutory mandates can be suspended because, despite its repeated failure to heed those mandates, the county does not consider Sandra D.'s release from custody to be in her best interest; and we have concluded they may not.

*By the Court.*—Orders reversed.