### In the Interest of R.A.

**Sylvia M. RUTTEN, M.D., Petitioner and Appellee,**

v.

**R.A., Respondent and Appellant.**

Civil No. 960182.

Supreme Court of North Dakota.

July 24, 1996.

Merle Ann Torkelson, State's Attorney, Washburn, for petitioner and appellee.

Loren C. McCray, Larson Law Firm, Jamestown, for respondent and appellant.

VANDE WALLE, Chief Justice.

R.A. appealed from an order of the district court of Stutsman County requiring that he be hospitalized and treated for mental illness for a period not to exceed 90 days. Because the order is supported by clear and convincing evidence, and because R.A. may not impeach the validity of the order by a collateral attack on the previous order under which he was committed, we affirm.

On March 4, 1994, R.A. made an initial appearance on a charge for aggravated assault for stabbing a worker with a butcher knife at the Grafton Developmental Center. On April 7, 1994, a hearing was held in which the district court of Walsh County found R.A. to be incompetent to stand trial and, "due to his limited intelligence, developmental dis-

abilities and irreversible organic condition," would not obtain competency in the foreseeable future. The Walsh County District Court further found that R.A. "lacked the capacity[,] at the time that he allegedly committed the offense[,] of comprehending the harmful nature or consequences of his conduct because of his developmental disability and other diagnosis." Upon these findings the Walsh County District Court dismissed the charge, as provided for by section 12.1–04–08(2), NDCC, and retained jurisdiction over R.A.'s placement for "a period not to exceed three years." The court ordered:

"R.A. is hereby placed into the custody of the Superintendent of the North Dakota State Hospital for further treatment, assessment, evaluation and placement for a period not to exceed three years with any placement made by the State Hospital to be based upon not only [R.A.'s] needs and placement in a least restrictive setting appropriate under the circumstances, but also taking into account due to his prior violent behavior the need to provide for the safety of the public and others including those supervising, working with, and residing with [R.A.]"

In a "memorandum" dated December 29, 1995, an Assistant Attorney General expressed concern to Dr. Joseph Belanger and Dr. Stephen Able about the State Hospital's authority to hold R.A. under the April 7th order. The Assistant Attorney General stated he was "not comfortable with the order" and questioned the district court's authority to issue the order. He expressed he "would be much more comfortable with an involuntary commitment proceeding" and "[u]pon entry of an order authorizing involuntary treatment[,] there would then be clear legal authority to continue his treatment at the State Hospital."

It was not until June 3, 1996, the State Hospital filed a petition in Stutsman County District Court for involuntary commitment as provided for under section 25–03.1–08, NDCC. On June 5, 1996, a treatment hearing was held to determine whether R.A. was a person requiring commitment and treatment for mental illness. At the hearing, R.A. requested the court to dismiss the petition,

arguing that the State Hospital violated his right to due process and abused its authority by continuing to hold him without a hearing for six months after the validity of the Walsh County order was questioned by the Attorney General's office. The district court denied R.A.'s request.

The Stutsman County District Court heard testimony and found that R.A. suffers from a mental disorder described as "minimal brain disfunction." The Stutsman County District Court further found that R.A. "has exploited and behaved aggressively while [an] inpatient at the State Hospital." He "has made repeated acts of physical assaults while at the State Hospital" and "has acted out sexually by instigating sex with vulnerable patients in the State Hospital." The Stutsman County District Court also found R.A. to have a history of assaultive behavior, including the stabbing incident at the Grafton Developmental Center. Due to R.A.'s "impulsive behavior," the district court decided that alternative treatment to involuntary commitment was not feasible. Upon these findings, the court concluded:·

> "[R.A.] suffers from a mental illness which substantially impairs his capacity to use self-control, judgment and discretion, and that there is a substantial likelihood of substantial harm to himself and others as demonstrated by past actions and threats, and a substantial likelihood of substantial deterioration in mental health which would predictably result in a dangerousness to the respondent or others."

The Stutsman County District Court ordered that R.A. be hospitalized and treated by the North Dakota State Hospital until September 3, 1996, or until further order of the court.

It is significant to note that R.A. does not deny there was clear and convincing evidence to sustain the State Hospital's June 3, 1996, petition for involuntary commitment. Rather, R.A.'s position is because an Assistant Attorney General advised the State Hospital he was "uncomfortable" with the Walsh County District Court order under which R.A. was being held, the State Hospital should have brought a petition for involuntary commitment shortly after receiving the advice. Failure to do so, R.A. contends, is a denial of due process which entitles him to be released at least until another petition is filed and another involuntary treatment hearing held based on "new" facts. We reject R.A.'s request for several reasons.

■ First, we have previously held that we will not decide a constitutional controversy when the procedure condemned as a violation of due process rights has no bearing on the appellant's present circumstances. *In Interest of C.W.*, 453 N.W.2d 806 (N.D.1990). We previously noted R.A. does not contend the evidence is insufficient to order his involuntary commitment. Furthermore, we have also held the remedy for a due process violation is a hearing in which the respondent receives due process. *See In Interest of Gust*, 345 N.W.2d 42 (N.D.1984). R.A. does not contend he did not receive due process at the Stutsman County hearing.

■ Secondly, without analysis of the statutes (see Chapter 12.1–04, NDCC), R.A. asks us to accept as settled law the invalidity of the Walsh County order because of the memo from the Attorney General. He argues the State Hospital conceded the correctness of the memo by petitioning for involuntary commitment, although several months too late. We reject the argument. It is apparent that R.A.'s attack on the Walsh County order is a collateral attack not favored by the law. *See, e.g., Nygord v. Dietz*, 332 N.W.2d 708 (N.D.1983) [order by one district judge cannot be circumvented by commencing second action on same facts in different county]. If R.A. believes the Walsh County order was invalid, his remedies were several: motion to the Walsh County District Court to set aside its order; appeal; or writ of habeas corpus. R.A. pursued none of these procedures.

■ R.A.'s position presupposes, without analysis of the statutes, that the memo from the Assistant Attorney General "trumps" the Walsh County District Court order. That is contrary to established law. Assuming, only for this discussion, the "memo" from the Assistant Attorney General is the opinion of the Attorney General, *see Walker v. Weilenman*, 143 N.W.2d 689 (N.D.1966), the opinion

of the Attorney General does not supplant that of the courts. *State ex rel. Johnson v. Baker,* 74 N.D. 244, 21 N.W.2d 355 (1945). The State Hospital was entitled to rely on the Walsh County order and we do not view the subsequent petition in Stutsman County as now foreclosing the State Hospital's reliance on the order.

Finally, for his requested relief, i.e., that he be released and any new proceeding be based on "new" evidence, R.A. relies on a decision by the Court of Appeals of Wisconsin in *State ex rel. Sandra D. v. Getto,* 175 Wis.2d 490, 498 N.W.2d 892 (1993). But the facts of that case alone distinguish it. In *Getto,* Sandra D. was detained and commitment proceedings were commenced. A hearing was set within the prescribed 14 days but it was never held because the hospital's doctors failed to deliver their reports to Sandra D.'s counsel in advance of the hearing as required by Wisconsin statutes. Instead, Sandra D. was held under emergency detention while commitment proceedings started all over again; yet another hearing was set, medical reports were again not timely filed, the proceeding once again was dismissed, and yet another emergency proceeding filed. By the time Sandra D. filed her petition for a writ of habeas corpus she had been "temporarily" detained for nearly two months although the original hearing should have been held within 14 days. The writ of habeas corpus was denied and a final hearing was held on the petition. On appeal from the denial of the writ and from the order of commitment, the appellate court concluded that the emergency process was abused when Sandra D.'s detention was continued while a third petition was filed on the same facts after the first two were dismissed because of the actions of the hospital's doctors. Under those circumstances, the appellate court held that the abuse was not corrected by a subsequent hearing. The Court ordered the third proceeding dismissed and specified that any subsequent proceeding be based on "new" facts.

The distinction between *Getto* and this case are apparent, they merit no further discussion. The Stutsman County District Court order for hospitalization and treatment is affirmed.

SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.