In the MATTER OF the PROTECTIVE PLACEMENT, with
Guardianship, OF JUDITH G.:

KINDCARE, INC., Petitioner-Respondent,

v.

JUDITH G., Appellant.

Court of Appeals

*No. 00–3450. Submitted on briefs January 9, 2002.—Decided
January 29, 2002.*

2002 WI App 36

(Also reported in 640 N.W.2d 839.)

818

On behalf of the appellant, the cause was submitted on the briefs of *Carol J. Wessels* of *SeniorLAW/Legal Action of Wisconsin, Inc.*, Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Janet F. Resnick* of *Resnick & Yamat, S.C.*, Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. FINE, J.   Judith G. appeals from an order for protective placement under WIS. STAT. § 55.06, which directed that she be "placed in the least restrictive placement commensurate with her needs as designated by the Milwaukee County Department on Aging." Ms. G. has since died. We decide the appeal nevertheless because of the importance of the issue it raises and, given the age and health condition of many of the persons for whom protective placement is sought, the issue may otherwise evade appellate review. *See State ex rel. Jones v. Gerhardstein*, 141 Wis. 2d 710, 725, 416 N.W.2d 883, 889 (1987). Moreover, the liability of Ms. G.'s estate for the costs associated with her protective placement may turn on our decision. *See Ethelyn I.C. v. Waukesha County*, 221 Wis. 2d 109, 120–121, 584 N.W.2d 211, 216 (Ct. App. 1998) (although subject of a protective placement under WIS. STAT. § 56.06(11) may

be liable for costs of that placement, subject not liable if the "initial detention was without a legal basis under the statutory guidelines").

¶ 2. As material to this appeal, WIS. STAT. § 55.06(11)(a) permits a guardian to have a ward taken into immediate protective custody if, from the guardian's "personal observation . . . it appears probable" that the ward "will suffer irreparable injury or death . . . as a result of . . . infirmities of aging . . . if not immediately placed" in protective-placement custody.[2] WISCONSIN STAT. § 55.06(11)(b) requires that "[u]pon detention, a petition shall be filed under [WIS. STAT. § 55.06] sub. 2 by the person making such emergency placement and a preliminary hearing shall be held within 72 hours, excluding Saturdays, Sundays and

---

[2] WISCONSIN STAT. § 55.06(11)(a) provides in full:

If from personal observation of a sheriff, police officer, fire fighter, guardian, if any, or authorized representative of a board designated under s. 55.02 or an agency designated by it it appears probable that an individual will suffer irreparable injury or death or will present a substantial risk of serious physical harm to others as a result of developmental disabilities, infirmities of aging, chronic mental illness or other like incapacities if not immediately placed, the person making the observation may take into custody and transport the individual to an appropriate medical or protective placement facility. The person making placement shall prepare a statement at the time of detention providing specific factual information concerning the person's observations and the basis for emergency placement. The statement shall be filed with the director of the facility and shall also be filed with any petition under sub. (2). At the time of placement the individual shall be informed by the director of the facility or the director's designee, both orally and in writing, of his or her right to contact an attorney and a member of his or her immediate family and the right to have an attorney provided at public expense, as provided under s. 967.06 and ch. 977, if the individual is a child or is indigent. The director or designee shall also provide the individual with a copy of the statement by the person making emergency placement.

legal holidays, to establish probable cause to believe the grounds for protective placement under sub. (2)." WISCONSIN STAT. § 55.06(2) permits certain persons, including guardians, to:

[P]etition the circuit court to provide protective placement for an individual who:

(a) Has a primary need for residential care and custody;

. . .

(c) As the result of . . . infirmities of aging . . . is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to oneself or others.

¶ 3. The issue presented by this appeal is whether the circuit court loses competence to adjudicate a person's need for protective placement if the probable-cause hearing is not held within seventy-two hours after the person was taken into custody, or whether, as the trial court determined, the seventy-two-hour clock can be reset by the simple expedient of filing a new petition for protective placement. We hold that the circuit court loses competence if the probable-cause hearing is not held within seventy-two hours after the person is first taken into custody, and that the mere filing of a new petition does not start the clock anew. Accordingly, we reverse.

**I.**

¶ 4. The following are the undisputed facts that are material to this appeal. On March 6, 2000, the circuit court determined after a hearing that Ms. G. was, as phrased in the March 29, 2000, order entered on

that determination, "incapable of caring for herself by reason of the infirmities of aging and senile dementia and [was] a proper subject for a limited guardianship." The circuit court appointed Kindcare, Inc., as the corporate "guardian of the person and estate of" Ms. G. *See* WIS. STAT. §§ 880.33(5m) & 880.35 (approved non-profit corporations may be appointed as guardian of the person and estate of an incompetent). The March 29th order directed Kindcare to review Ms. G.'s then living arrangements "utilizing the criteria of least restrictive placement."

¶ 5. On May 2, 2000, Kindcare filed a petition seeking Ms. G.'s temporary emergency protective placement, alleging that she was "a suitable person" under WIS. STAT. § 55.06(11). On May 2, 2000, Kindcare also filed a petition for protective placement against Ms. G. On May 3, 2000, Kindcare moved Ms. G. from where she was living to the skilled-nursing area of the Jewish Home and Care Center in Milwaukee. Kindcare did not get a court order authorizing the move, and a probable-cause hearing in connection with the move was not held within seventy-two hours of the move. Kindcare filed an amended protective-placement petition on May 16, 2000.

¶ 6. Ms. G. sought to have the amended petition for protective placement dismissed because of the circuit court's failure to hold a probable-cause hearing within seventy-two hours. The matter was heard by the circuit court on June 23, 2000. Although Kindcare represented to the circuit court that Ms. G. consented to being moved to the Jewish Home and Care Center, Ms. G.'s counsel disagreed, contending that Ms. G. was moved "against her will."

¶ 7. The circuit court ruled at the June 23rd hearing that moving Ms. G. on May 3, 2000 triggered

the need for a seventy-two-hour probable-cause hearing under WIS. STAT. § 55.06(11)(b). As noted, there was no such hearing. Accordingly, the circuit court dismissed "without prejudice" the amended petition for protective placement filed against Ms. G. and granted her petition for habeas corpus. Kindcare then indicated that it would simply "refile" the petition, which it did that day. Neither party contends that anything in Ms. G.'s condition changed between May 3, 2000, and June 23, 2000. The June 23rd petition is substantively identical to the amended petition that was filed on May 16, 2000.

¶ 8.    June 23, 2000, was a Friday. The circuit court set the probable-cause hearing under WIS. STAT. § 55.06(11)(b) for Monday, June 26, 2000. At that time, Ms. G. moved to dismiss the June 23rd petition. The circuit court denied her motion. After taking testimony from Kindcare's executive director, the circuit court found probable cause for the May 3, 2000, move. A four-day jury trial was held in mid-July, 2000, and Ms. G. was found to be "in need of protective placement." The jury also found that "a nursing home setting" was "the least restrictive environment" for Ms. G. The order for protective placement from which this appeal was taken was entered on the verdict.

## II.

[1, 2]
¶ 9.    Whether a circuit court may adjudicate the merits of a protective-placement petition filed under WIS. STAT. § 55.06(11) is a matter of statutory analysis that we review *de novo. State ex rel. Sandra D. v. Getto*, 175 Wis. 2d 490, 493, 498 N.W.2d 892, 893 (Ct. App. 1993). We start with the statutory mandate that a guardian may not protectively place a ward without following the procedures set out in WIS. STAT. § 55.06.

Wis. Stat. § 880.33(7) ("A finding of incompetency and appointment of a guardian under this subchapter is not grounds for involuntary protective placement. Such placement may be made only in accordance with s. 55.06.").

¶ 10. As we have seen, there are two ways under § 55.06 that a guardian may seek a ward's protective placement. First, the guardian may file a petition for protective placement. Wis. Stat. § 55.06(2). If this route is followed, the ward may not be protectively placed unless there is a finding "by clear and convincing evidence that the individual to be placed is in need of placement." Wis. Stat. § 55.06(7).

¶ 11. Second, a guardian may seek to have the ward "immediately placed" if "from personal observation . . . it appears probable" that the ward "will suffer irreparable injury or death . . . as a result of . . . infirmities of aging" if not taken into custody immediately. Wis. Stat. § 55.06(11)(a). This emergency protective placement is governed by Wis. Stat. § 55.06(11)(b), which provides:

> Upon detention, a petition shall be filed under sub. (2) by the person making such emergency placement and a preliminary hearing shall be held within 72 hours, excluding Saturdays, Sundays and legal holidays, to establish probable cause to believe the grounds for protective placement under sub. (2).

If the court finds probable cause for the emergency detention, the court "may order temporary placement up to 30 days pending the hearing for a permanent placement." Wis. Stat. § 55.06(11)(c). Thus, a person taken into emergency custody under § 55.06(11)(a) may not be held for more than thirty days after a finding of probable cause without a final trial on whether perma-

nent protective placement is warranted. *N.N. v. County of Dane*, 140 Wis. 2d 64, 69, 409 N.W.2d 388, 390–391 (Ct. App. 1987) (thirty-day time limit under § 55.06(11)(c) is mandatory).

¶ 12.   The legislature imposed tight timetables in connection with the involuntary detention of persons alleged to be incapable of caring for themselves in recognition of the significant liberty interest a person has in living where and under what conditions he or she chooses. *See Sandra D.*, 175 Wis. 2d at 500, 498 N.W.2d at 896. Thus, unless those time limits are obeyed a court loses competence to decide whether that liberty interest should give way in the face of more significant considerations. *Id.*, 175 Wis. 2d at 497, 498 N.W.2d at 895. The specific issue raised by this appeal is a matter of first impression:   whether the seventy-two-hour clock established by WIS. STAT. § 55.06(11)(b) may be re-started if:   1) a probable-cause hearing required by that section is not held within seventy-two hours of the emergency detention; 2) as a result, the court dismisses "without   prejudice"   the   petition   filed   under § 55.06(11)(b); and 3) the person or entity that seeks to retain in custody the subject of the petition for more than seventy-two hours files a new petition. We hold that it may not.

¶ 13.   There are three decisions that light our path: *N.N.*, *State ex rel. B.S.L. v. Lee*, 115 Wis. 2d 615, 340 N.W.2d 568 (Ct. App. 1983), and *Sandra D.* In *N.N.*, as noted, the circuit court did not hold the final protective-placement trial within thirty days as mandated by WIS. STAT. § 55.06(11)(c). *N.N.*, 140 Wis. 2d at 69 n.2, 409 N.W.2d at 391 n.2. This required dismissal of the protective placement petition. *Id.*, 140 Wis. 2d at 69–70, 409 N.W.2d at 390–391. We observed, however,

825

that nothing discussed in that decision was "a bar to recommencement of proceedings for protective placement or such other remedies as may be appropriate." *Id.*, 140 Wis. 2d at 70, 409 N.W.2d at 391. We neither analyzed nor decided, however, the permissible limits of whatever "recommencement" might be attempted.

¶ 14. In *B.S.L.*, a juvenile under the age of fourteen was placed at an inpatient facility under Wis. Stat. ch. 51. *B.S.L.*, 115 Wis. 2d at 617–618, 340 N.W.2d at 569. Under chapter 51, the juvenile had to be discharged within forty-eight hours of his or her fourteenth birthday if he or she requested it, unless the authorities filed an emergency-detention affidavit. *Id.*, 115 Wis. 2d at 618, 340 N.W.2d at 569. Chapter 51 also required that the committed juvenile undergo two psychiatric evaluations before the final detention hearing. *Id.*, 115 Wis. 2d at 617, 340 N.W.2d at 569. Four days before his fourteenth birthday on January 22, 1983, B.S.L. made the necessary request to be released from custody. *Id.*, 115 Wis. 2d at 618, 340 N.W.2d at 569. At a timely hearing, the circuit court found probable cause for B.S.L.'s continued commitment and appointed two psychiatrists to examine B.S.L. *Id.*, 115 Wis. 2d at 619, 340 N.W.2d at 569. The examinations were never made. *Ibid.* As a result, the final commitment hearing, scheduled for February 11, 1983, was never held, and the circuit court dismissed the case and ordered B.S.L. discharged. *Ibid.* County officials "immediately filed a second affidavit for emergency detention alleging essentially the same facts as the first affidavit." *Ibid.* The court again found probable cause to continue to hold B.S.L. in custody, and scheduled a final commitment hearing. *Ibid.*

¶ 15. B.S.L. appealed, contending that the dismissal was an adjudication on the merits under Wis.

STAT. RULE 805.14(7) ("Unless the court in its order for dismissal otherwise specifies for good cause recited in the order, any dismissal under this section operates as an adjudication upon the merits.") and that, therefore, the principles of claim preclusion barred the proceedings on the second emergency-detention affidavit. *Id.*, 115 Wis. 2d at 619–620, 340 N.W.2d at 570. The juvenile also contended that, as phrased by *B.S.L.*, he "had a constitutional due process right to an examination by two independent specialists and access to their reports forty-eight hours before the final commitment hearing." *Id.*, 115 Wis. 2d at 621, 340 N.W.2d at 570. He asserted that filing the second emergency-detention affidavit to give the psychiatrists more time thus invaded his liberty interest. *Ibid.*

¶ 16.  In connection with B.S.L.'s claim-preclusion argument, we held that the dismissal was ordered before any testimony was heard at the scheduled final hearing and that, therefore, the dismissal was not on the merits. *Id.*, 115 Wis. 2d at 620–621, 340 N.W.2d at 570. We disagreed with his due-process claim, noting that "[a]ll time limits required by statute were met during the first proceeding for continued detention," and that the first proceeding was dismissed because of a "procedural defect." *Id.*, 115 Wis. 2d at 621, 340 N.W.2d at 570. We also rejected his related argument that permitting "the filing of a second affidavit after dismissal of the first leads to abuse of the commitment process," observing that "[a]ny initial proceeding may be dismissed with prejudice if the trial court believes the process is being abused." *Id.*, 115 Wis. 2d at 622, 340 N.W.2d at 571.

¶ 17.  *Sandra D.*, like *N.N.*, concerned the thirty-day limit in WIS. STAT. § 55.06(11)(c). We held that the circuit court lost competence to proceed with the final

827

hearing on a petition for protective placement because that hearing was not held within the thirty days. *Sandra D.*, 175 Wis. 2d at 493, 498 N.W.2d at 893. Before the case came to us on appeal, non-compliance with the thirty-day limit (as well as a fourteen-day limit in an applicable provision of WIS. STAT. ch. 51 that is not at issue in this case) was papered over by the filing of successive petitions for protective placement. *Id.*, 175 Wis. 2d at 495–499, 498 N.W.2d at 894–896. We observed that although we were sympathetic with the County's view that Sandra D. needed protective placement, "the next respondent in a commitment or placement proceeding who is similarly deprived of his or her liberty for twice—or three or four times—the thirty-day limit may not be." *Id.*, 175 Wis. 2d at 499, 498 N.W.2d at 896. Accordingly we held that the successive petitions in that case violated Sandra D.'s due process rights against unlawful involuntary detention. *Ibid.* Distinguishing *B.S.L.*'s observations that the filing of the second affidavit in that case was not an abuse of the commitment process, and that trial courts were empowered to dismiss with prejudice if they believed that "the process is being abused," we held that the finding of probable cause that Sandra D.'s condition satisfied the protective-placement criteria did not "cure" the failure to hold the final hearing within the thirty-day period. *Sandra D.*, 175 Wis. 2d at 500–501, 498 N.W.2d at 896. We noted that WIS. STAT. § 55.06(11) "does not allow continued, multiple periods of detention upon repeated assurances that probable cause exists for the subject's temporary, emergency detention." *Id.*, 175 Wis. 2d at 501, 498 N.W.2d at 896–897.

¶ 18.   As we have seen, WIS. STAT. § 55.06(7) prevents the detention of the subject of a protective-placement petition unless there has been a finding by

clear and convincing evidence that the person "is in need of placement," *"[e]xcept* for emergency placement or temporary placement under" WIS. STAT. 55.06(11). (Emphasis added.) Here, and unlike the situation in *B.S.L.*, there was *no* compliance with the "time limits required by [the] statute [here, § 55.06(11)(b)] . . . during the first proceeding for continued detention." *See B.S.L.*, 115 Wis. 2d at 621, 340 N.W.2d at 570. Rather, as in *Sandra D.*, a successive petition was filed here *only* to *avoid* the time limits. But § 55.06(11)(b) requires that "[u]pon detention . . . a preliminary hearing shall be held within 72 hours . . . to establish probable cause to believe the grounds for protective placement under sub. (2)." Thus, the hearing must be held within seventy-two hours of the *detention,* not the filing of the petition. The filing of the successive petition was a nullity because Ms. G., by then, had been in custody for more than seventy-two hours without a probable-cause hearing. *See N.N.*, 140 Wis. 2d at 69, 409 N.W.2d at 390–391.

¶ 19. This comports with the legislature's intent to limit significantly the time the subject of a protective-placement petition must spend in involuntary detention without court approval. *See Sandra D.*, 175 Wis. 2d at 500, 498 N.W.2d at 896. Timing the running of the seventy-two hours from either the filing of the initial petition or, as was done here, from the filing of a successive petition would either dilute or destroy the protection afforded by § 55.06(11)(b). *See Heritage Credit Union v. Office of Credit Unions*, 2001 WI App 213, ¶ 18, 247 Wis. 2d 589, 603, 634 N.W.2d 593, 600 ("When construing statutes we are to give them their common sense meaning to avoid unreasonable and absurd results."). Ms. G. did nothing to delay the probable-cause hearing beyond the required seventy-two hours; thus, her continued detention be-

yond that period was unlawful. *See County of Milwaukee v. Edward S.*, 2001 WI App 169, ¶¶ 5–11, 247 Wis. 2d 87, 90–94, 633 N.W.2d 241, 243–245 (subject of an involuntary commitment petition under WIS. STAT. ch. 51 who creates delay may not argue that hearing held beyond mandatory time limit deprived court of competence). Accordingly, we reverse.[3]

*By the Court.*—Order reversed.

---

[3] In light of our resolution of this appeal, we do not discuss Ms. G.'s other arguments. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).