COURT OF APPEALS
DECISION
DATED AND FILED

February 16, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1215**

STATE OF WISCONSIN

Cir. Ct. No. 2021GN120

IN COURT OF APPEALS
DISTRICT IV

---

IN THE MATTER OF THE CONDITION OF R. S.:

J. C.,

　PETITIONER-RESPONDENT,

V.

R. S.,

　RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Reversed.*

¶1    FITZPATRICK, J.[1] R.S.[2] appeals an order of the Dane County Circuit Court that granted a petition for a protective placement. R.S. contends that the petitioner failed to establish each element set forth in WIS. STAT. § 55.08(1) and, as a result, the circuit court lacked a basis to order the protective placement. For the reasons discussed below, I agree with R.S. and reverse the order of the circuit court.

¶2    The careful circuit judge was placed in a difficult position. At the evidentiary hearing on the protective placement petition, it was established that R.S. requires residential care and custody, that R.S. is incapable of providing for her own care, and, as such, there is a substantial risk of serious harm to R.S. It was also shown that R.S.'s family is no longer able to care for her, in spite of her family's heartfelt and significant efforts. However, petitioner failed to establish by admissible testimony that R.S. suffers from a "degenerative brain disorder" or "other like incapacit[y]," and that condition is permanent or likely to be permanent. *See* WIS. STAT. § 55.08(1)(c), (d). The statutory elements that protect the due process rights of R.S. cannot be overlooked. "Although protecting people from harm is important, so is due process." ***Dodge Cnty. v. Ryan E.M.***, 2002 WI App 71, ¶11, 252 Wis. 2d 490, 642 N.W.2d 592.

**BACKGROUND**

¶3    There is no dispute as to the following material facts.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Consistent with WIS. STAT. § 809.19(1)(g), this opinion refers to the respondent-appellant by her initials, and this opinion refers to R.S.'s children but does not name those persons.

¶4    In June 2021, R.S.'s daughter, proceeding pro se, petitioned the court for a guardianship of R.S.'s person.  With the petition was a report written by Abby Allen,[3] a physician's assistant.[4]  In July 2021, the daughter, still pro se, filed a petition for protective placement of R.S.  Michelle Allaby, a certified social worker for Dane County, filed a comprehensive evaluation regarding that petition as ordered by the circuit court pursuant to WIS. STAT. § 55.11(1).

¶5    In August 2021, a hearing was held before a court commissioner regarding the petition for the guardianship of R.S.'s person.  The guardian ad litem for R.S. met with her and determined that R.S. did not contest the petition for a guardianship.  The court commissioner ordered that R.S.'s son is the guardian of her person.

¶6    In October 2021, the circuit court held an evidentiary hearing on the request for protective placement of R.S.  By that time, the daughter had retained counsel, and counsel prior to the hearing filed an amended petition for protective placement.  R.S.'s daughter and social worker Allaby were the only witnesses at the hearing.  At the close of testimony, counsel for R.S. requested dismissal of the petition because no medical or psychological professional testified at the hearing and, as a result, the daughter failed to prove the necessary elements that R.S. has a degenerative brain disorder or other like incapacity that is permanent or likely to be permanent.  In response, R.S.'s daughter argued that those disputed elements

---

[3] The handwriting on the report is often difficult to decipher, but the signature refers to Allen as a "P.A."  R.S.'s briefing in this court refers to Allen as a "physician's assistant," and that is not disputed by R.S's daughter.

[4] There was no request for a guardianship of the estate because that was previously resolved by R.S. through an advance planning document.

3

were subsumed within findings made at the time the court commissioner ordered a guardianship of R.S.'s person.

¶7 The circuit court denied R.S.'s motion and determined that there was clear and convincing evidence of each of the required elements. The court granted the petition and ordered a protective placement for R.S. in a community-based residential facility. R.S. appeals the circuit court's order granting the protective placement. R.S. does not appeal the guardianship order. However, aspects of the guardianship petition and hearing make a difference to my analysis, and I will discuss those later.

¶8 Other material facts will be mentioned in the following discussion.

## DISCUSSION

¶9 This appeal concerns the construction and application of WIS. STAT. ch. 55 which governs the state's protective system for adults at risk. Questions of statutory construction and whether the circuit court correctly applied the applicable statutes to the facts are subject to de novo review. *Jackson Cnty. Dept. of Health and Human Servs. v. Susan H.*, 2010 WI App 82, ¶10, 326 Wis. 2d 246, 785 N.W. 677; *Kindcare, Inc. v. Judith G.*, 2002 WI App 36, ¶9, 250 Wis. 2d 817, 640 N.W.2d 839. The circuit court's factual findings will not be overturned by this court unless those are clearly erroneous. *Coston v. Joseph P.*, 222 Wis. 2d 1, 22, 586 N.W.2d 52 (Ct. App. 1998).

¶10 WISCONSIN STAT. ch. 55 authorizes protective placements in which an individual is placed in a residential facility for care. *See* WIS. STAT. § 55.01(6), (6m), (6r). WISCONSIN STAT. §§ 55.08(1) and 55.10(4)(d) require a circuit court to determine that four elements are established by clear and convincing evidence

before ordering a protective placement. The individual may be placed in protective placement if he or she: (1) has "a primary need for residential care and custody"; (2) is "an adult who has been determined to be incompetent by a circuit court"; (3) is "so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself" because of a "degenerative brain disorder … or other like incapacities"; and (4) has "a disability that is permanent or likely to be permanent." Sec. 55.08(1)(a)-(d).

¶11 A "huge liberty interest" is at risk in a protective placement proceeding because it is "indefinite in duration and thereby [is] tantamount to a life sentence to a nursing home or other custodial setting." *Jefferson Cnty. v. Joseph S.*, 2010 WI App 160, ¶13, 330 Wis. 2d 737, 795 N.W.2d 450 (quoting *Walworth Cnty. v. Therese B.*, 2003 WI App 223, ¶12, 267 Wis. 2d 310, 671 N.W.2d 377). Those liberty interests, and an individual's due process rights, are recognized in the "Declaration of policy" in WIS. STAT. § 55.001 which states in part:

> This chapter is designed to establish those protective services and protective placements, to assure their availability to all individuals when in need of them, and to place the least possible restriction on personal liberty and exercise of constitutional rights consistent with due process and protection from abuse, financial exploitation, neglect, and self-neglect.

Sec. 55.001.

¶12 Because of the liberty interest a person has in living where and under what conditions they choose, the legislature has required procedural protections enunciated in WIS. STAT. ch. 55 to protect due process rights of persons potentially subject to a protective placement. *Joseph S.*, 330 Wis. 2d 737, ¶13; *Kindcare, Inc.*, 250 Wis. 2d 817, ¶12. Accordingly, the parties do not have the option of

avoiding the requirements of ch. 55 on the ground of efficiency. *See **Dane Cnty. v. Kelly M.***, 2011 WI App 69, ¶30, 333 Wis. 2d 719, 798 N.W.2d 697.

¶13    As noted, the first element which must be shown is that R.S. has "a primary need for residential care and custody." WIS. STAT. § 55.08(1)(a).  In the circuit court, and in this appeal, R.S. does not dispute that this element was established by the evidence at the evidentiary hearing.  As was also noted earlier, the second element is that R.S. is "an adult who has been determined to be incompetent by a circuit court." Sec. 55.08(1)(b).  R.S. concedes that this element has been satisfied because a determination of incompetency is a requisite of the order in the guardianship. *See* WIS. STAT. § 54.10(3)(a).

¶14    As applicable here, the third element mandates that the evidence establish that R.S. is "so totally incapable of providing for … her own care or custody as to create a substantial risk of serious harm to … herself" because of a "degenerative brain disorder … or other like incapacit[y]." WIS. STAT. § 55.08(1)(c).  At this point, I will consider whether R.S. was incapable of providing for her own care so as to create a substantial risk of serious harm to herself.  Whether she suffers from degenerative brain disorder or other like incapacity, and whether that condition is permanent or likely to become so (the fourth element), will be discussed later in this opinion.

¶15    R.S. argues that the evidence did not prove that there was a substantial risk of serious harm to herself because she cannot care for herself.  Rather, R.S. asserts that the evidence showed only that she needs some assistance with daily life.  The record and the circuit court's findings of fact, to which I defer, establish otherwise.

¶16 The testimony of R.S.'s daughter and the social worker proved the following. R.S. lived with her daughter at the time of the hearing and previously resided with her son. R.S. requires around-the-clock supervision and care because of her unsafe behaviors and memory impairment. Among other things, R.S. requires assistance taking her prescribed medication and with meal preparation. Further concerns are that: R.S. wanders out of her daughter's house which is near a busy road; R.S. undresses and urinates outside the house; and R.S. leaves burning butts of her cigarettes on the carpet in the house and on her clothing. R.S.'s daughter encourages R.S. to bathe, but R.S. often refuses to do so for long stretches of time. Because of her unsteady balance, R.S. is at a risk of falls and injury from falls. The problem is made more acute because R.S. sometimes loses consciousness without warning.

¶17 The circuit court found credible the testimony of the social worker and R.S.'s daughter and made findings of fact consistent with their testimony. From that, the circuit court concluded that R.S. is incapable of providing for her own care, and that creates a substantial risk of serious harm to herself. The circuit court, based on those same findings of fact, concluded that a community-based residential facility was the least restrictive placement for R.S. under these circumstances. On appeal, R.S. presents no valid basis to overturn those findings of fact made by the circuit court.

¶18 As part of her argument, R.S. asserts that a community-based residential facility is not the least restrictive placement for her. Instead, she contends that she should be back at the home of either her daughter or son and, with that, she simply needs to receive protective services from a government agency. This assertion by R.S. is belied by the substantial efforts of her family to care for her in their own homes as R.S.'s abilities and cognition have further

deteriorated. The evidence was irrefutable that her family has tried to keep R.S. in their homes and, as stated by her daughter, they can not "keep going like this." R.S.'s daughter also testified that R.S. "needs more care than I can give her," and that she worries about her mother "[e]very[ ]day." To the extent that R.S. is arguing that her family should continue to keep up the very difficult job of personally caring for her 24 hours a day, 7 days a week, 365 days a year, and hope that protective services in the home will be enough, that argument was rejected by the circuit court for good reason. I find no basis in the record for this assertion from R.S.

¶19 The remaining issues are whether the daughter proved that R.S. suffers from a degenerative brain disorder or other like incapacity (part of element 3) and whether that condition is permanent or likely to be permanent (element 4). The circuit court concluded that these elements were met, and I will review those remaining disputed issues together.

¶20 The social worker testified at the protective placement hearing that she saw in R.S.'s medical records that R.S. suffers from "dementia" that is "permanent." R.S.'s daughter does not rely on that testimony to establish that the third and fourth elements were met. In fact, the daughter does not rely on any evidence from the protective placement hearing to support her position. Instead, she asserts that R.S.'s failure to dispute the petition for the guardianship of her person is tantamount to a concession that R.S. has a degenerative brain disorder that is permanent. That assertion fails on many levels.

¶21 First, WIS. STAT. § 54.48 makes clear that a grant of a guardianship is not grounds for an involuntary protective placement: "A finding of incompetency and appointment of a guardian under this chapter is not grounds for

8

involuntary protective placement or the provision of protective services. A protective placement and the provision of protective services may be made only in accordance with [WIS. STAT.] ch. 55." Sec. 54.48.

¶22 Second, as R.S. points out, there is no basis in the record from the guardianship hearing to support the daughter's assertion.[5] That is so because there is no transcript from the guardianship hearing. R.S. requested a transcript for this appeal. However, there is no dispute that, when a court reporter tried to access what should have been a recording of the guardianship hearing, none was available. Usually, we hold the failure to produce a transcript against an appellant. *See* ***Fiumefreddo v. McLean***, 174 Wis. 2d 10, 27, 496 N.W.2d 226 (Ct. App. 1993) ("[W]hen an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling."). In these circumstances, I refuse to hold that fact against R.S. She requested the transcript and, through no fault of her own, no transcript can be prepared. Rather, this very concerning situation has arisen because of the incompetence of the person who was responsible for the recording of R.S.'s guardianship hearing.

¶23 Third, the guardianship should not have been granted by the court commissioner. My discussion of this point goes to the daughter's argument on these disputed issues and will make a difference if another petition for a protective placement of R.S. is filed. As noted earlier, one element for a protective placement is that a circuit court has previously determined that R.S. is

---

[5] I have every confidence that the guardian ad litem took care to explain to R.S. the rights she was waiving by agreeing to the guardianship, but that does not control these disputed issues.

"incompetent." *See* WIS. STAT. § 55.08(1)(b). Whether R.S. is incompetent was decided in the guardianship proceeding. *See* WIS. STAT. § 54.10(3)(a). But, there is a shelf life (so to speak) on that determination of incompetence because WIS. STAT. § 55.075(3) states in pertinent part: "If the individual is adjudicated incompetent in this state more than 12 months before the filing of an application for protective placement … on … her behalf, the court shall review the finding of incompetency." Sec. 55.075(3). As a result, at the next protective placement hearing, R.S.'s incompetence will be revisited.

¶24 At any rate, the following is the problem with the guardianship granted by the court commissioner. In making a determination regarding a guardianship of the person, a court shall consider "[t]he medical or psychological report provided under [WIS. STAT. §] 54.36(1)." WIS. STAT. § 54.10(3)(c)2. That report, pursuant to WIS. STAT. § 54.36(1), must meet these standards:

> Whenever it is proposed to appoint a guardian on the ground that a proposed ward allegedly has incompetency …, a physician or psychologist, or both, shall examine the proposed ward and furnish a written report stating the physician's or psychologist's professional opinion regarding the presence and likely duration of any medical or other condition causing the proposed ward to have incapacity.

Sec. 54.36(1). To confirm the point, in ***R.S. v. Milwaukee Cnty.***, 162 Wis. 2d 197, 470 N.W.2d 260 (1991),[6] our supreme court stated:

> We do not question a circuit court's reliance on a licensed professional's written report under [WIS. STAT. §] 880.33

---

[6] In quite a coincidence, the person subject to the guardianship in that opinion from the Wisconsin Supreme Court has the same initials as the respondent-appellant in this matter. There is no basis to conclude that the R.S. discussed in this opinion is the same R.S. discussed in our supreme court's opinion.

> [(1987-88) (now § 54.36(1))] when the proposed ward does not object to the appointment of a guardian or does not object to the report being admitted as evidence. The legislature probably imposed the requirement of the report to aid the court and to protect proposed wards against improvident appointment of guardians based only on the testimony of possibly overzealous or self-interested petitioners. Comments of the Commissioners on Uniform State Laws to Uniform Guardianship and Protective Proceedings Act, 8A U.L.A. sec. 2-203, pp. 477-78 (1983).

*R.S.*, 162 Wis. 2d at 207-08. Accordingly, even if the guardianship is uncontested, there must be a report filed with the petition which meets the requirements of WIS. STAT. § 54.36(1) in order to grant the guardianship. *Id.*

¶25 R.S. did not provide to the court for the guardianship hearing a report that meets the requirements of WIS. STAT. § 54.36(1) because the report was from a physician's assistant rather than a physician or psychologist. Sec. 54.36(1). The term "physician," for purposes of WIS. STAT. ch. 54, is defined at WIS. STAT. § 54.01(24) ("'Physician' has the meaning given in [WIS. STAT. §] 448.01(5)."). The definition of physician in § 448.01(5) does not include a physician's assistant. The term "psychologist" is defined, for purposes of ch. 54, at § 54.01(27) ("'Psychologist' means a psychologist licensed under [WIS. STAT. §] 455.04(1) or (2)."). The definition of psychologist in § 455.04(1) and (2) does not include a physician's assistant.[7] For those reasons, the court commissioner should not have granted the guardianship and, therefore, the result of the guardianship proceeding regarding R.S. cannot be a determination that R.S. has a degenerative brain disorder that is permanent or likely to be permanent.

---

[7] On the form filed by the daughter regarding the guardianship, and signed by Abby Allen the physician's assistant, someone checked off a box which states: "I am a physician." That misrepresentation only makes matters worse.

11

¶26    Fourth, it is correct that the report of the physician's assistant filed with the guardianship petition states that R.S. has a "degenerative brain disorder" that is likely to be permanent.  However, the substance of that report is hearsay and is not admissible in evidence unless the physician's assistant testifies and is subject to cross-examination.  In *R.S.*, 162 Wis. 2d 197, our supreme court stated that, in a contested guardianship, there must be testimony of the professional who prepared the guardianship report under WIS. STAT. § 54.36(1):

> Because we conclude that [WIS. STAT. § 54.36(1)] does not provide that the hearsay written report of the licensed professional is admissible in evidence in a contested guardianship hearing without the in court testimony of the professional who prepared the report, we conclude that R.S.'s objection to admitting this hearsay evidence must be sustained.

*R.S.*, 162 Wis. 2d at 207.  From that holding from our supreme court, it is established that in-court testimony is required from the author of the report so the person potentially subject to the guardianship can cross-examine the witness.  *Id.* at 210.  The same principles must also apply to a contested protective placement petition.  Because the physician's assistant did not testify at the protective placement evidentiary hearing, her report cannot be the basis for a determination that R.S. has a degenerative brain disorder or that such a condition is likely to be permanent.

¶27    I now mention a related point because it may arise in another protective placement petition regarding R.S.  In her briefing in this court, R.S. appears to twice assert that the physician or psychologist who signs the WIS. STAT. § 54.36(1) report for the guardianship must testify concerning protective placement issues which concern medical or psychological opinions.  If R.S. intended to make that argument, it is incorrect.  As stated in *Therese B.*, a witness

need only give a "medical or psychological opinion." ***Therese B.***, 267 Wis. 2d 310, ¶13.  Neither WIS. STAT. ch. 55 nor any other authorities require that such an opinion must be from only a physician or psychologist.[8]  Instead, the circuit court must determine whether opinions are admissible pursuant to WIS. STAT. § 907.02(1), and those may (or may not) be from a physician's assistant based on the record made at the hearing.

¶28    In sum, the petitioner failed to present admissible testimony on two elements necessary for a protective placement order, and the petition fails for that reason.

## CONCLUSION

¶29    The circuit court's order for protective placement is reversed, and the petition shall be dismissed by the circuit court without prejudice.[9]

*By the Court.*—Order reversed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[8] When the legislature chooses to, it makes manifest its intention that an opinion from a physician is required in a protective placement proceeding.  *See, e.g.*, WIS. STAT. § 55.14(4) ("A petition under this section must include a written statement signed by a physician who has personal knowledge of the individual that provides general clinical information regarding the appropriate use of psychotropic medication for the individual's condition and specific data that indicates that the individual's current condition necessitates the use of psychotropic medication.").

[9] Nothing in this opinion curtails R.S.'s son or daughter from filing another petition for protective placement for R.S. under WIS. STAT. ch. 55 with a request for temporary protective placement pursuant to WIS. STAT. § 55.135, or for any other temporary relief that may be available pursuant to ch. 55.