**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**November 18, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1747-CR**

Cir. Ct. No. **2014CF385**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KYLE A. SCHAEFER,

DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Marathon County: MICHAEL K. MORAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 GILL, J. Kyle A. Schaefer appeals from an order granting the Department of Health Services' (DHS) petition to revoke his conditional release

under WIS. STAT. § 971.17(3)(e) (2023-24).[1]  The DHS detained Schaefer, and it filed with the circuit court both a statement showing probable cause for his detention and a petition to revoke his conditional release.  However, the DHS failed to timely submit the probable cause statement and the petition to "the regional office of the state public defender" (SPD) within 72 hours as required by § 971.17(3)(e) (hereinafter, "the 72-hour requirement").  Consistent with this court's decision in *State v. Olson*, 2019 WI App 61, ¶2, 389 Wis. 2d 257, 936 N.W.2d 178, the circuit court found that it lacked competency to consider the DHS's petition, and it dismissed the petition.  Following the dismissal, the court inquired whether the DHS would file a second petition to revoke Schaefer's conditional release, to which the DHS responded that it would likely do so.

¶2     Within one hour of the circuit court's dismissal, and while Schaefer remained in custody, the DHS filed a second petition to revoke Schaefer's conditional release, and Schaefer filed another motion to dismiss.  Citing *Olson*, Schaefer argued that the court again lacked competency to proceed on the DHS's petition because he had remained in custody for longer than 72 hours without the DHS submitting a statement of probable cause or the petition to revoke his conditional release to the SPD, in violation of WIS. STAT. § 971.17(3)(e).  Schaefer further argued that the DHS could not avoid the 72-hour requirement by filing the second petition because that petition was based on the same allegations made to revoke his conditional release under the first petition.  The court denied Schaefer's second motion to dismiss, and, following a hearing, it revoked his conditional release.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

¶3 This court recognized in *Olson* that WIS. STAT. § 971.17(3)(e) does not provide a remedy for the DHS's failure to comply with the 72-hour requirement. However, consistent with the text of the statute and case law interpreting the purpose of § 971.17(3)(e) and similar statutes, we conclude that the circuit court's dismissal of the DHS's first petition to revoke Schaefer's conditional release ended the proceeding resulting from the first petition and functioned as a break in Schaefer's detention for purposes of the statutory requirements. Based upon that break in Schaefer's detention, we conclude that the DHS complied with the 72-hour requirement in all respects upon its filing of the second petition to revoke Schaefer's conditional release, and the circuit court therefore had competency to proceed on the petition's merits.

¶4 Furthermore, because a circuit court's dismissal of a previously filed petition for loss of competency is not a decision on the merits of a DHS petition to revoke a committee's conditional release, the court has competency to reach the merits of a subsequent timely filed DHS petition alleging the same facts for revocation as the earlier filed petition, so long as those facts remain relevant. For these reasons, we affirm the circuit court's order revoking Schaefer's conditional release.

## BACKGROUND

¶5 In 2016, Schaefer was ordered committed for 45 years after he was found not guilty by reason of mental disease or defect (NGI) of attempted first-degree intentional homicide and first-degree recklessly endangering safety, both with the use of a dangerous weapon and as incidents of domestic abuse, after

he shot two of his relatives without provocation or warning.[2] *State v. Schaefer*, No. 2017AP1759-CRNM, unpublished op. and order at 3-4 (WI App Jan. 3, 2019); *see also* WIS. STAT. RULE 809.23(3)(a). The circuit court ordered that Schaefer be placed in institutional care and involuntarily committed. *Schaefer*, No. 2017AP1759-CRNM at 3-4.

¶6    Schaefer was granted conditional release in August 2021 upon the circuit court finding that conditional release would not pose a significant risk of harm to Schaefer or others. The court granted Schaefer's release with the condition that Schaefer reside at the Bridge Street Mission in Wausau and that any change in residence be approved by a "case manager and agent." Moreover, Schaefer was required to "participate and engage in various groups, activities, and meetings offered through Bridge Street Mission" for a minimum of 20 hours per week.

¶7    On September 1, 2022, Schaefer was detained in the Marathon County Jail for failing to comply with the conditions of his release. That same day, a DHS representative petitioned the circuit court to revoke Schaefer's conditional release, stating that Schaefer did not have a permanent residence "due to a lack of engagement in programming required by the placement." The DHS representative further alleged that Schaefer's lack of engagement in programming "is a stability factor that is a part of his conditional release plan. His lack of a residence will significantly impact his mental health and the safety of himself and the community." Included at the end of the one-page petition was a notation that a

---

[2] Schaefer pled no contest to both counts, and the parties waived a trial on his mental responsibility. *State v. Schaefer*, No. 2017AP1759-CRNM, unpublished op. and order at 3 (WI App Jan. 3, 2019); *see generally* WIS. STAT. § 971.165.

copy of the petition was to be released to, among other entities, the SPD and the circuit court.

¶8      The circuit court received both the petition and a request for a hearing on September 2, 2022, and a hearing was scheduled for September 26, 2022.[3]  It is undisputed that the petition was not released to the SPD within 72 hours of Schaefer's September 1, 2022 detention and that the SPD did not learn of Schaefer's initial detention until September 21, 2022, when the circuit court's judicial assistant sent a notice via email regarding the hearing.

¶9      At the September 26, 2022 hearing, Schaefer's defense counsel, who was an attorney for the SPD, made an oral motion to dismiss the DHS's petition and requested that Schaefer be released from custody.  The circuit court instructed Schaefer to file authority on his motion, and it declined to release him from custody at that time.

¶10     On September 27, 2022, Schaefer, through his defense counsel, filed a written motion to dismiss the petition.  Citing *Olson*, Schaefer argued that the circuit court lost competency to hear the petition based on the DHS's failure to comply with the 72-hour requirement.  Schaefer also argued that the DHS had violated his due process rights and his right to counsel.[4]

---

[3] WISCONSIN STAT. § 971.17(3)(e) states that the "court shall hear" the DHS's petition to revoke "within 30 days, unless the hearing or time deadline is waived by the detained person."

The DHS representative incorrectly addressed the request for a hearing to the Price County Circuit Court.  However, the Marathon County Clerk of Court electronically stamped the request as having been received on September 2, 2022.  It is undisputed that the request for a hearing was not forwarded to the regional office of the SPD.

[4] Schaefer does not argue on appeal that his due process rights or his right to counsel were violated.

¶11    On September 29, 2022, the circuit court held a hearing to address Schaefer's motion to dismiss the DHS's petition. At the hearing, the DHS's representative who filed the petition testified that he had released the petition to "our CCAP uploads mailbox with our office associates to be distributed to the Courts and to the [SPD]. To my knowledge it was not sent directly to the [SPD]. It was only sent to the CCAP upload mailbox." Following this testimony, the court granted Schaefer's motion and dismissed the petition. The court concluded that the DHS had failed to comply with the 72-hour requirement and that the court was required to dismiss the petition. The court asked the DHS whether it was "going to refile that," to which the DHS's representative stated, "I believe that would likely be our position but I am not sure." The court then stated, "All right. That's the next step and that's one step beyond me."[5]

¶12    Forty-four minutes after the circuit court dismissed the DHS's September 1, 2022 petition, the DHS filed a nearly identical petition to revoke Schaefer's conditional release.[6] The SPD received notice of the petition within an

---

[5] It does not appear from the hearing transcript that Schaefer was released from custody following the circuit court's dismissal of the DHS's first petition, and Schaefer would later argue in his second motion to dismiss that he "was not released on September 29, 2022[,] when the first petition to revoke was dismissed."

In its supplemental brief on appeal, the DHS asserted that there "is no evidence that Schaefer was confined or detained" in the 44-minute period between the circuit court dismissing the DHS's first petition to revoke and the DHS's filing of the second petition to revoke. At oral argument, however, the DHS stated that it "presum[ed]" that Schaefer was in custody during the 44-minute period. Based on the DHS essentially conceding that Schaefer remained in custody during the 44-minute period, we will not consider the DHS's argument from its supplemental brief that there is a factual issue as to whether Schaefer was out of custody during the that period.

[6] More specifically, DHS's second petition included the same probable cause statement as its first petition. However, the second petition was signed on September 29, 2022, and listed September 29, 2022, as the date that Schaefer was "placed into custody." (Formatting altered.) At oral argument, the DHS conceded that the second petition did not contain any new allegations that occurred between September 1, 2022, and September 29, 2022.

hour after it was filed. Schaefer filed a motion to dismiss the DHS's second petition, arguing that the circuit court had lost competency, that Schaefer should have been released following the court granting his first motion to dismiss for loss of competency, and that the DHS "cannot simply fix their previous error by filing a new petition."

¶13 A hearing was held on October 21, 2022, to address the DHS's second petition and Schaefer's motion to dismiss. Following arguments by the parties, the circuit court concluded that nothing within WIS. STAT. § 971.17(3)(e) prevented the DHS from refiling a petition to revoke an NGI committee's conditional release following a dismissal for loss of competency. The court further found that that the DHS had not exhibited any malicious intent and that the second petition was before the court "as soon as possible." Moreover, the court concluded that the DHS's grounds for revoking Schaefer's conditional release were "ongoing grounds" concerning "no ongoing housing options, no form of income, no residence …, and other issues of that nature." Thus, the court denied Schaefer's motion to dismiss.

¶14 The circuit court then heard evidence on the DHS's second petition,[7] and it revoked Schaefer's conditional release in an oral ruling after finding that he presented a risk of danger to himself and others due to his failure to comply with

_____

[7] Schaefer's case manager testified at the hearing that Schaefer had stopped complying with his conditions of release in July 2022 by declining "to sign ongoing tier housing program contracts to Bridge Street Mission," meaning that Schaefer lacked any housing and income.

his conditions of release. The court issued written orders granting the DHS's second petition and for Schaefer's subsequent placement into institutional care.[8]

¶15 Schaefer now appeals, challenging the circuit court's denial of his motion to dismiss the DHS's second petition to revoke his conditional release.[9]

## DISCUSSION

¶16 The DHS may petition the circuit court to revoke a subject's conditional release under WIS. STAT. § 971.17(3)(e). The subject may be taken into "custody" if the DHS "alleges … that the safety of the person or others requires that conditional release be revoked."[10] *Id.* If the subject is placed in custody, the DHS

---

[8] We note that the circuit court stated in its oral ruling that it granted the DHS's petition because the DHS had proved by clear and convincing evidence that Schaefer's violation of his conditions—namely, his failure to remain at Bridge Street Mission—and his lack of income created a substantial risk of dangerousness to himself or others. However, in its written order granting the DHS's petition to revoke, the court stated that the DHS had proved by clear and convincing evidence that Schaefer had violated a condition of release. We further note that in reaching its decision at the hearing, the court relied on WIS. STAT. § 971.17(5) (the standard for petitions to terminate NGI commitments), not the standard for petitions to revoke an order for conditional release set forth in § 971.17(3)(e). Regardless, Schaefer does not raise a challenge to either of these potential issues, and we will not address them further.

[9] Following initial briefing by the parties, we asked the parties to file supplemental briefs, and we subsequently held oral argument in Wausau, Wisconsin, on September 16, 2025.

[10] After we held oral argument in this case, this court issued its decision in an unrelated case, *State v. Wilhite*, 2025 WI App 64, ¶3, ___ Wis. 2d ___, ___ N.W.2d ___, holding that "WIS. STAT. § 971.17(3)(e) is unconstitutional to the extent that it permits a circuit court to revoke an NGI acquittee's conditional release and commit the NGI acquittee to institutional care without a finding of dangerousness." We concluded that the unconstitutional provisions in § 971.17(3)(e) were severable, and, therefore, we left in place and deemed operative the remainder of the statute. *Wilhite*, ___ Wis. 2d ___, ¶¶3, 61 & n.9. The provisions of § 971.17(3)(e) deemed unconstitutional in *Wilhite* are not at issue in this appeal, but we nonetheless reference and quote the statute as it stands following the *Wilhite* decision. *See Wilhite*, ___ Wis. 2d ___, ¶61 & n.9.

> shall submit a statement showing probable cause of the detention and a petition to revoke the order for conditional release to the committing court and the regional office of the state public defender responsible for handling cases in the county where the committing court is located within 72 hours after the detention, excluding Saturdays, Sundays, and legal holidays.

*Id.*[11]

¶17　The circuit court "shall hear the petition within 30 days, unless the hearing or time deadline is waived by the detained person." *Id.* "Pending the revocation hearing, the [DHS] may detain the person in a jail or in a hospital, center or facility specified by [WIS. STAT. §] 51.15(2)(d)." At the revocation hearing,

> [t]he state has the burden of proving by clear and convincing evidence … that the safety of the person or others requires that conditional release be revoked. If the court determines after hearing … that the safety of the person or others requires that conditional release be revoked, it may revoke the order for conditional release and order that the released person be placed in an appropriate institution under [WIS. STAT. §] 51.37(3) until the expiration of the commitment or until again conditionally released under this section.

Sec. 971.17(3)(e).

¶18　The parties dispute whether the DHS violated the 72-hour requirement when it filed its second petition to revoke Schaefer's conditional release, thereby depriving the circuit court of competency to consider the DHS's second petition.

---

[11] Both parties agree, as does this court, that the phrase "taken into custody" means some form of "detention" in a jail or other like facility. *See* WIS. STAT. § 971.17(3)(e). Accordingly, we use the terms "custody" and "detention" synonymously to refer to placement in a jail or other like facility.

¶19    "Competency to proceed in this context—i.e., when a party fails to comply with a statutory time limit—refers to a circuit court's power to adjudicate the specific controversy before it." *Olson*, 389 Wis. 2d 257, ¶11. "A party's failure to comply with a statutory time limit deprives a court of competency to proceed only when the time limit is mandatory." *Id.* The 72-hour requirement in WIS. STAT. § 971.17(3)(e) is mandatory, and, therefore, the DHS's failure to comply with the requirement deprives a circuit court of competency to consider the petition to revoke an individual's conditional release. *Olson*, 389 Wis. 2d 257, ¶2.

¶20    "Whether a circuit court has lost competency to proceed is a question of law," which we review de novo. *Id.*, ¶10. This appeal also requires us to interpret WIS. STAT. § 971.17(3)(e), which likewise presents a question of law. *See Service Emps. Int'l Union Healthcare v. WERC*, 2025 WI 29, ¶5, 416 Wis. 2d 688, 22 N.W.3d 876.

¶21    We consider our discussion in *Olson* to be instructive. In *Olson*, an NGI committee, Olson, was taken into custody after the DHS alleged that he had violated conditions of his release by using methamphetamine. *See Olson*, 389 Wis. 2d 257, ¶¶5-6. The DHS waited eight days after Olson's detention to submit a statement of probable cause and a petition to revoke Olson's conditional release to both the circuit court and the SPD. *Id.*, ¶¶6-7. Olson filed a motion to dismiss the DHS's petition for loss of competency because the DHS had failed to comply with the 72-hour requirement. *Id.*, ¶7. The circuit court held that the 72-hour requirement is directory, as opposed to mandatory, and it denied Olson's motion to dismiss. *Id.*, ¶8.

¶22    On appeal, we held that the 72-hour requirement is mandatory, not directory, and therefore the DHS's failure to comply with the 72-hour requirement deprived the circuit court of competency to proceed with the DHS's petition. *Id.*, ¶11. In concluding that the 72-hour requirement is mandatory, we held that WIS. STAT. § 971.17(3)(e) has two purposes: to "protect the public while—at the same time—preventing delay by the court or the State." *Olson*, 389 Wis. 2d 257, ¶20. We noted that unlike the 30-day hearing requirement in the statute, the 72-hour requirement affects the "initiation of the proceedings"—as opposed to the "timely resolution of the proceedings"—and thus ensures timely judicial oversight and access to counsel. *See id.*, ¶¶20-21 (citation omitted).

¶23    We stated that when the DHS "delays initiating revocation proceedings, it need not make any argument or expose itself to an adverse decision from a passive decision-maker because it is depriving both the court and opposing counsel of even knowing of the delay." *Id.*, ¶22. Further, we stated that the injury occasioned by the DHS's failure to comply with the 72-hour requirement "counsels strongly in favor of construing the time limit as mandatory" because it is "absurd" to place the burden on a pro se NGI committee to obtain counsel or judicial review via the "'extraordinary writ of habeas corpus,' which itself is 'available to a petitioner only under limited circumstances.'" *Id.*, ¶32. Thus, we characterized the injury sustained by the detained person due to the DHS's failure to comply with the 72-hour requirement as "grave." *Id.*, ¶34. We reversed the circuit court's order denying Olson's motion to dismiss, and we remanded with directions for the court to dismiss the DHS's petition. *Id.*

¶24    Schaefer argues that pursuant to WIS. STAT. § 971.17(3)(e) and *Olson*, the circuit court lost competency to consider the DHS's second petition to revoke his conditional release. He contends that the DHS failed to comply with

11

the 72-hour requirement because he remained "confined" since September 1, 2022, and the DHS's second petition did not restore the court's competency. He asserts that this conclusion is dictated by the text of the statute, which requires the DHS to notify the SPD of a petition to revoke "a released person" "within 72 hours *after the detention*," not within 72 hours after the petition is filed. (Emphasis added.) Schaefer argues that the DHS "cannot 're-detain' a person who has not been released. If the person remains in physical custody, they have remained detained throughout."

¶25 A holding to the contrary, argues Schaefer, would permit the DHS to "cure" any time limit violation "simply by starting over" and filing subsequent petitions, rendering the 72-hour requirement a "nullity" and "meaningless," contrary to *Olson*. As he did in the circuit court, Schaefer compares the DHS's filing of a second, nearly identical petition in this case to cases where appellate courts of this state have barred successive petitions involving the emergency detention of individuals under WIS. STAT. chs. 51 and 55.

¶26 Schaefer proposes that when the DHS fails to comply with the 72-hour requirement, the circuit court would have competency to consider a second petition only if: (1) the individual is "physically released" from detention; (2) the DHS re-detains the individual; and (3) the DHS files another petition alleging "new grounds" for revocation of the individual's conditional release and complies with the 72-hour requirement. In addition, Schaefer contends that the amount of time necessary between the individual's release and his or her second detention is "fact-specific," but he asserts that this particular issue need not be addressed in this case because Schaefer was never released following the circuit court's dismissal of the DHS's first petition.

12

¶27   For its part, the DHS argues that the issue surrounding the amount of time necessary between the individual's release and his or her second detention illustrates the difficulty in applying Schaefer's proposed interpretation of WIS. STAT. § 971.17(3)(e).  The DHS asserts that "[n]either *Olson* nor § 971.17(3)(e) identifies *release* as a remedy for procedural violations" of the 72-hour requirement.  (Emphasis added.)  The DHS contends that the statute permits it to detain an NGI committee even if he or she has not been released from custody because a "released person" is not necessarily out of "detention."  The DHS further argues that a "released person" is an NGI committee on conditional release pursuant to a previous court order and that a circuit court's dismissal of a petition to revoke that conditional release essentially "ends those proceedings and functions as a break in the released person's detention tied to those proceedings."

¶28   In other words, the DHS contends that "at the moment that the court dismissed" the first petition, Schaefer was "effectively back on conditional release" and a new "72-hour clock" began because he remained in custody.  The DHS further asserts that neither WIS. STAT. § 971.17(3)(e) nor *Olson* prevented it from re-detaining Schaefer following the court's dismissal of the first petition and filing a second petition, "even if based on the same unlitigated facts and probable cause as the first petition."

¶29   Additionally, according to the DHS, cases in the WIS. STAT. chs. 51 and 55 commitment contexts do not compel a particular holding in this case because, among other things, those chapters involve "strict time limits" and implicate "significant liberty interest[s]."

¶30   We agree with the DHS that the *Olson* court did not hold or otherwise indicate that an NGI committee must be released from custody when a

DHS petition to revoke is dismissed because the DHS failed to comply with the 72-hour requirement. Nor did *Olson* hold or otherwise indicate that the DHS would need to allege new facts, separate from those alleged in the first petition, in order for the circuit court to have competency to hear a second petition.

¶31 Indeed, the text of WIS. STAT. § 971.17(3)(e) does not support a conclusion that those remedies are required when a circuit court dismisses a DHS petition for failure to comply with the 72-hour requirement. To reiterate, § 971.17(3)(e) states that if the DHS alleges that the safety of the "released person" or others requires that conditional release be revoked, "he or she may be taken into custody" and the DHS "shall submit a statement showing probable cause of the detention and a petition to revoke the order for conditional release to the committing court and" the SPD "within 72 hours after the detention."

¶32 Based on the text of the statute, we agree with the DHS that the term "released person" refers to an NGI committee who is on conditional release, not an NGI committee who is necessarily released from custody. The legislature's use of the term "released person" in WIS. STAT. § 971.17(3)(e) has a special definitional meaning in the context of conditional release. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 ("Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."); WIS. STAT. § 990.01(1). This conclusion is evident from the text of the statute, which refers multiple times to "conditional release," "[a] conditionally released person," and "a person … conditionally released." *See* § 971.17(3)(e). Therefore, a "released person" need not be released from custody for the DHS to petition to revoke his or her conditional

14

release, and we reject Schaefer's argument that § 971.17(3)(e) prevents the DHS from re-detaining a person who has not been released from custody.

¶33     Given this conclusion, we further agree with the DHS that a circuit court's dismissal of the DHS's first petition to revoke an NGI committee's conditional release based on the DHS's failure to comply with the 72-hour requirement ends the first proceeding and functions as a break in the committee's detention, thus restarting the 72-hour clock under WIS. STAT. § 971.17(3)(e).  At that point, the NGI committee is no longer under a detainer related to the first petition, and a circuit court's dismissal of the first petition returns the NGI committee back to conditional release, even if the committee is not released from custody.  In other words, under the plain meaning of the statute, the NGI committee who has been conditionally released is a "released person" whether he or she is in custody or not.

¶34     Furthermore, a circuit court's dismissal for loss of competency due to the DHS's failure to comply with the 72-hour requirement is not a decision on the merits of the DHS's first petition to revoke.  Rather, the court's dismissal is a recognition that the DHS engaged in a procedural violation, not a substantive violation that would result in dismissal with prejudice.  Thus, the DHS is not prohibited from "showing probable cause of the detention" in the second petition using the same allegations and facts as the first petition.  *See* WIS. STAT. § 971.17(3)(e).  If, however, the DHS does not file a second petition and the NGI committee is not released from custody, or if subsequent petitions continue to violate the 72-hour requirement without the committee's release, the committee has several avenues of recourse, which we outline below.

15

¶35 Here, immediately after the circuit court dismissed the first petition, the court asked the DHS if it would be filing a second petition, to which the DHS stated that it would be "likely," and it did so 44 minutes later.[12] The DHS then complied with the 72-hour requirement by notifying the SPD of Schaefer's detention and its petition within 72 hours of the dismissal of the first petition (i.e., when Schaefer, a released person, was re-detained and not released from custody), and the court therefore had competency to consider the merits of the second petition at the October 21, 2022 hearing. As demonstrated by prior case law, our conclusion is not only supported by the text of WIS. STAT. § 971.17(3)(e), but it is also consistent with the purpose of the statute, and to hold otherwise would be to conclude that the DHS's failure to timely notify the SPD of the grounds for an NGI committee's detention results in a prejudicial dismissal of the revocation petition.

¶36 In *State v. R.R.E.*, 162 Wis. 2d 698, 470 N.W.2d 283 (1991), an NGI committee petitioned the circuit court for reexamination and conditional release, but, due to "various events related to court administration, the petition was lost for three months." *Id.* at 703, 711. Under the statutes in effect at the time, a hearing on the petition was required to be held within 30 days of its filing, but a hearing was not held for approximately two months. *See id.* At the hearing, the NGI committee moved to be released from custody for the circuit court's "failure to give him a hearing in conformity with the" 30-day time limit. *Id.* The court dismissed the NGI committee's petition. *Id.* at 704.

---

[12] In raising this question, it appears that the circuit court implicitly recognized that Schaefer's initial detention for purposes of the statute had ended and that, based on the DHS's answer that it would likely file a second petition, the DHS was re-detaining Schaefer.

¶37 On appeal, the parties disputed whether the 30-day requirement was mandatory, and they also "disput[ed] the appropriate remedy" for a violation of the requirement. *Id.* at 707. The NGI committee argued that he was entitled to release from custody because the circuit court failed to abide by the statutory time limits for holding a hearing on his petition for reexamination," which the committee argued were mandatory, not directory. *Id.* at 704. He also argued that, under precedent, "the only remedy available to the committed individual is dismissal of his or her petition" and that this remedy "offers no recourse to the petitioner whatsoever as he or she is compelled to once again file a new petition that again may not be acted upon within the" 30-day time limit. *Id.* at 705.

¶38 Our state supreme court concluded that the NGI committee was not entitled to release from custody despite the violation of the 30-day requirement for holding a hearing on his petition for reexamination. *Id.* at 704. The court stated that the "legislature did not intend the release" of NGI committees "without a court determination that the individual may be safely released." *Id.* Instead, the legislature intended to protect the public from the release of dangerous individuals who have already been found to have committed a crime:

> Because the defendant has committed a crime, the public is entitled to the assurance that the defendant's mental condition and dangerousness will be thoroughly evaluated under circumstances that will best accomplish this objective, while ensuring that the defendant's right to be released if he or she has recovered or is no longer dangerous is protected.

*Id.* at 708-09 (formatting altered; citation omitted).

¶39 The *R.R.E.* court stated that to adopt the NGI committee's position that "committed individuals must be released from their commitment for the violation of their statutory right to a reexamination hearing within thirty days"

17

"would place a heavy burden on society for even nominal procedural delays of the court." *Id.* The court further noted that the statute provided that if a hearing was not held within 30 days of the filing of the petition, but was held within 120 days, "the court shall within 24 hours of the filing order an examination to be completed within 7 days by the appropriate county department." *Id.* at 710 n.4. According to the court, if a violation of the 30-day requirement "were regarded as mandatory and requiring release, then violation of these time limits would also require release." *Id.* The court stated that "[r]elease for a violation of" the 7-day "provision, and especially for a violation of" the 24-hour "provision, would be an excessive remedy in proportion to the degree that strict observance of these time limits is necessary to ensure a prompt hearing." *Id.* The *R.R.E.* court further noted that the legislature did not provide a remedy for a violation of the 30-day requirement. *Id.* at 710. The court stated that "it seems likely [the legislature] would have expressly stated its intention in order to alert the circuit courts of the extreme consequences for failing to comply with the time limitations." *Id.*

¶40 The supreme court agreed with the NGI committee, however, that "to conclude that the only remedy available to him in this case is dismissal of his petition would" "only serve[] to punish the already aggrieved petitioner" and produce "an absurd and unreasonable result that was not intended by the legislature." *Id.* at 714. Therefore, the court held that "[i]f the circuit court has violated the statute's time limitation, then the court's duty when it becomes aware of the error is to hold the reexamination hearing as quickly as possible. This duty is, of course, enforceable by mandamus." *Id.* at 715.

¶41 Similarly, in *State v. Schertz*, 2002 WI App 289, ¶1, 258 Wis. 2d 351, 655 N.W.2d 175, this court held that the 30-day requirement for a revocation hearing under WIS. STAT. § 971.17(3)(e) is directory, not mandatory, and

18

concluded that a failure to hold a hearing within 30 days does not deprive a circuit court of competency to consider the DHS's petition to revoke an individual's conditional release. We applied the analysis in *R.R.E.* to reach this conclusion. *Schertz*, 258 Wis. 2d 351, ¶8. Notably, we held that § 971.17(3)(e) has the same policy objectives as outlined by the *R.R.E.* court in the context of petitions for conditional release: to protect the public from the release of an NGI committee without a court determination that a committee may be safely released; and to permit an NGI committee the ability to gain release once he or she is no longer dangerous. *Schertz*, 258 Wis. 2d 351, ¶9. We also expressed our concern that if the 30-day deadline were mandatory, it would allow an NGI committee to be released regardless of the potential danger a committee posed to themselves or the public.[13] *Id.*, ¶11.

¶42 Decisions in other commitment contexts that are more akin to NGI commitments than WIS. STAT. chs. 51 and 55 commitments further support our conclusions that the DHS's failure to comply with the 72-hour requirement does not require an NGI committee to be released from custody, and that failure does not bar a subsequent petition from using the same facts that were alleged in a petition that was dismissed for a procedural defect.

---

[13] The *Olson* court distinguished *State v. R.R.E.*, 162 Wis. 2d 698, 470 N.W.2d 283 (1991), and *State v. Schertz*, 2002 WI App 289, 258 Wis. 2d 351, 655 N.W.2d 175, by stating that the violations in those cases were "nominal procedural delays." *State v. Olson*, 2019 WI App 61, ¶21, 389 Wis. 2d 257, 936 N.W.2d 178 (citation omitted). *Olson* is distinguishable in this respect because it concerned whether the 72-hour requirement is mandatory or directory, not whether a violation of the 72-hour requirement requires the release of an NGI committee from custody before a subsequent petition can be filed, which is essentially the issue now before this court.

¶43    In particular, our state supreme court has held that the violation of a mandatory time limit in WIS. STAT. ch. 980 does not immediately equate to the remedy of release.  In **State ex rel. Marberry v. Macht**, 2003 WI 79, 262 Wis. 2d 720, 665 N.W.2d 155, the court[14] concluded that a ch. 980 committee was not entitled to release from custody as a result of the department's failure to conduct an initial evaluation within the six-month timeframe required by WIS. STAT. § 980.07(1), despite that time requirement being mandatory.[15]  **Marberry**, 262 Wis. 2d 720, ¶¶1-2.  The lead opinion stated,

> "Release of a ch. 980 patient whose dangerousness or mental disorder has not abated serves neither to protect the public nor provide care and treatment for the patient." Accordingly, "release is not only inappropriate, it is not justifiable under the dual purposes of the statute: protection of the public from sexually violent persons likely to reoffend and care and treatment of the patient."

*Id.*, ¶30 (citation omitted).

¶44    The lead opinion further concluded that "[i]f the purpose is to provide a sanction that will force state officials to follow the law, contempt is the better sanction than release [of the committed person]" because release is an "excessive sanction," and the "costs are way too high." *Id.* (alteration in original;

---

[14] While one justice did not participate in **Marberry** and the remaining justices were divided on certain issues, the justices were nevertheless unanimous in the conclusion that release was not an appropriate remedy for a violation of the relevant time limit in that case. *See **State ex rel. Marberry v. Macht**, 2003 WI 79, ¶4, 262 Wis. 2d 720, 665 N.W.2d 155; **Marberry**, 262 Wis. 2d 720, ¶36 (A.W. Bradley, J., concurring).

[15] WISCONSIN STAT. § 980.07(1) (2001-02) required the department to reexamine a WIS. STAT. ch. 980 committee's mental condition within six months of the initial commitment. **Marberry**, 262 Wis. 2d 720, ¶¶1, 3.

Procedurally, the WIS. STAT. ch. 980 committee in **Marberry** had sought his release by means of a habeas corpus petition.  **Marberry**, 262 Wis. 2d 720, ¶4.

citation omitted). The lead opinion distinguished WIS. STAT. ch. 980 committees from individuals subject to WIS. STAT. chs. 51 and 55 commitments, comparing its decision to **R.R.E.** and NGI committees. **Marberry**, 262 Wis. 2d 720, ¶¶31-32 & n.10.

¶45 In addition, the lead opinion stated that, as in the NGI context, "release" for WIS. STAT. ch. 980 committees "is not the only adequate remedy for noncompliance with the statutory time limits for reexamination, because the committed person retains the ability to compel a reexamination under the statutory procedure for supervised release, or, if the statutory remedy is unavailable, by a writ of mandamus" "backed up by contempt, with a fine or jail as a sanction." **Marberry**, 262 Wis. 2d 720, ¶¶27, 33.

¶46 In **State v. Beyer**, 2006 WI 2, ¶7, 287 Wis. 2d 1, 707 N.W.2d 509, the supreme court similarly held that the appropriate remedy for a WIS. STAT. ch. 980 committee "when a circuit court fails to take prompt action to appoint counsel or an independent examiner and hold a probable cause hearing under WIS. STAT. § 980.09(2)" is not the committee's release from custody.[16] Instead, the appropriate remedy is for the committee to "move for a writ of mandamus or a supervisory writ to compel the circuit court to take immediate action." **Beyer**, 287 Wis. 2d 1, ¶7.

> If counsel or an independent examiner delays the proceedings, a ch. 980 committee could move the circuit

---

[16] The precise issue before the court was whether the WIS. STAT. ch. 980 committee's due process rights were violated by a delay of over 22 months between the first annual periodic examination report and the circuit court's probable cause hearing to determine whether facts existed that warranted a hearing on whether the committee was still a sexually violent person. **State v. Beyer**, 2006 WI 2, ¶18, 287 Wis. 2d 1, 707 N.W.2d 509. The **Beyer** court concluded that the committee's due process rights were violated by the delay. **Id.**

> court for just and equitable relief such as an order to show
> cause why counsel or the independent examiner should not
> be discharged or why the independent examiner should not
> be ordered to conduct the examination promptly or provide
> the examination report to the circuit court immediately.

*Beyer*, 287 Wis. 2d 1, ¶7. The *Beyer* court reached these conclusions while relying on similar reasoning as that provided in the court's lead opinion in *Marberry*. *See Beyer*, 287 Wis. 2d 1, ¶¶50-54.

¶47 To be sure, cases in the WIS. STAT. chs. 51 and 55 commitment context have held that violations of mandatory time limits require the dismissal of a commitment petition and the release of the subject committee. *See, e.g.*, *State ex rel. Lockman v. Gerhardstein*, 107 Wis. 2d 325, 328-30, 320 N.W.2d 27 (Ct. App. 1982) (concluding that the failure to conduct a final commitment hearing within 14 days of detention pursuant to WIS. STAT. § 51.20(7)(c) requires release from temporary detention and dismissal of the commitment petition); *N.N. v. County of Dane*, 140 Wis. 2d 64, 69-70, 409 N.W.2d 388 (Ct. App. 1987) (reaching the same result under WIS. STAT. ch. 55); *Dane County v. Stevenson L.J.*, 2009 WI App 84, ¶¶13-15, 320 Wis. 2d 194, 768 N.W.2d 223; *Kindcare, Inc. v. Judith G.*, 2002 WI App 36, ¶¶18-19, 250 Wis. 2d 817, 640 N.W.2d 839.

¶48 As other courts have explained, however, there are significant differences between WIS. STAT. chs. 51 and 55 commitments and NGI commitments. Individuals subject to chs. 51 or 55 commitments are not within the "custody and control" of any state agency or department unless the subject is before a circuit court on a petition for recommitment or an extension of a guardianship. *See* WIS. STAT. § 971.17(3)(e). The *R.R.E.* court recognized the distinction between chs. 51 and 55 commitments and NGI commitments, stating:

> [W]hen a defendant is committed pursuant to [§ 971.17(1)],
> he or she has already been found beyond a reasonable

22

doubt to have committed a criminal act, which is unquestionably conduct outside the range of acceptable behavior. Thus, commitment under those circumstances does not involve the concern associated with civil commitment that the person is being committed for conduct within the range of socially acceptable behavior. In addition, the fact that a person who has been found not guilty by reason of mental disease has committed a criminal act demonstrates a degree of dangerousness to society that may be lacking in the actions of one who is civilly committed.

*R.R.E.*, 162 Wis. 2d at 713-14 (alteration in original; citation omitted); *Marberry*, 262 Wis. 2d 720, ¶31 n.10 ("Persons committed under [WIS. STAT. ch.] 980 … are considered more dangerous as a class than those committed under Chapter 51.").

¶49    This court has previously likened the compelling interest of the State in the revocation of a parole or probation offender to that of a "conditionally released insanity acquittee," stating that "the conditional liberty interest of a probationer or parolee" is "identical to those of a conditionally released insanity acquittee." *State v. Mahone*, 127 Wis. 2d 364, 369-70, 379 N.W.2d 878 (Ct. App. 1985); *State v. Jefferson*, 163 Wis. 2d 332, 337-38, 471 N.W.2d 274 (Ct. App. 1991) ("To meet minimum due process at mental recommitment proceedings pursuant to [WIS. STAT. § 971.17(3)], a person is entitled to the same procedural rules or steps that are required or fashioned in probation or parole revocation proceedings."). Probationers and parolees in criminal cases "have a more limited due process right than those who have not yet been convicted of a crime." *State ex rel. Griffin v. Smith*, 2004 WI 36, ¶22, 270 Wis. 2d 235, 677 N.W.2d 259 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)).

¶50    The *Mahone* court stated that "[a]lthough obvious distinctions exist between a conditionally released insanity acquittee and a defendant on probation or parole, these do not go to the competing governmental and individual interests

23

at stake when considering the extent of due process protections required." *Mahone*, 127 Wis. 2d at 369. Instead, in both the NGI context and the probation and parole context, the State has a compelling interest in protecting the public from "one who has already committed a crime when such a person has demonstrated that he [or she] cannot be safely retained in the community." *Id.* at 369-70. "Just as the release of a parolee before the end of his [or her] prison sentence is made with recognition of the risk that the offender might not be able to live in society without committing additional anti-social acts, so also with a conditionally released insanity acquittee." *Id.* at 370 (citing *Morrissey v. Brewer*, 408 U.S. 471, 483 (1972)). The *Mahone* court stated that "[s]uch a person has been found to have committed all the requisite elements of a criminal offense" and that a conditionally released insanity acquittee's mental instability raises a legitimate concern for societal safety and signals a risk of the commission of additional anti-social acts. *Id.*

¶51 Indeed, one key legislative purpose of WIS. STAT. § 971.17 is to protect the public. *See Olson*, 389 Wis. 2d 257, ¶20; *Schertz*, 258 Wis. 2d 351, ¶9; *R.R.E.*, 162 Wis. 2d at 708-09. Conversely, the legislature has expressly provided in WIS. STAT. chs. 51 and 55 that the purpose of those chapters is to provide treatment to individuals in need while also protecting the personal liberty of those individuals. *See* WIS. STAT. §§ 51.001(2), 55.001. Section 971.17 lacks any express policy statement like the policy statements provided in chs. 51 and 55.

¶52 This distinction is logical. To revoke an NGI committee's conditional release, the DHS must allege that the individual is dangerous to himself or herself and/or others. *See* WIS. STAT. § 971.17(3)(e); *see also State v. Wilhite*, 2025 WI App 64, ¶3, ___ Wis. 2d ___, ___ N.W.2d ___. Moreover, NGI committees have been found guilty, beyond a reasonable doubt, of committing the

24

elements of the criminal offense that subjects them to the "custody and control" of the DHS. *See* WIS. STAT. § 971.165; § 971.17(3)(e); *Mahone*, 127 Wis. 2d at 370; *R.R.E.*, 162 Wis. 2d at 708-09. Thus, "the State has an overwhelming interest in being able to return the individual to" custody without the burden of needing to release that individual due to a procedural error. *See Morrissey*, 408 U.S. at 483 (discussing a defendant's due process rights in parole revocation proceedings and stating that "[g]iven the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he [or she] has failed to abide by the conditions of" parole); *Mahone*, 127 Wis. 2d at 370.

¶53 Similarly, an NGI committee's right to counsel is not founded in constitutional principles, unlike the right to counsel in WIS. STAT. chs. 51 and 55 commitments. While WIS. STAT. § 971.71(3)(e) clearly provides a statutory right to counsel for proceedings involving conditional release revocation, the constitutional right to counsel does not apply to revocation proceedings. *See Smith*, 270 Wis. 2d 235, ¶22 ("The Supreme Court has not extended a per se Sixth Amendment right to counsel at revocation hearings or certiorari review of revocation decisions in part because probationers and parolees have a more limited due process right than those who have not yet been convicted of a crime.").

¶54 Our conclusion does not provide the DHS unfettered authority to detain an NGI committee indefinitely without compliance with the 72-hour

requirement.[17]   First, an NGI committee can seek recourse through WIS. STAT. § 805.03 if the DHS is abusing the revocation process by, for example, filing a new petition to revoke every 72 hours without notifying the circuit court or the SPD.  *See State ex rel. Sandra D. v. Getto*, 175 Wis. 2d 490, 500-01, 498 N.W.2d 892 (Ct. App. 1993) (reversing a WIS. STAT. ch. 51 commitment based, in part, on the circuit court's finding that subjecting the committee to a third unlawful detention was "an abuse of process"); *State ex rel. B.S.L. v. Lee*, 115 Wis. 2d 615, 622, 340 N.W.2d 568 (Ct. App. 1983) (holding, in the ch. 51 commitment context, that "[a]ny initial proceeding may be dismissed with prejudice if the trial court believes the process is being abused").  If a circuit court finds that the DHS is abusing the revocation process, it may dismiss the DHS's petition to revoke, and "[a]ny dismissal under [§ 805.03] operates as an adjudication on the merits unless the court in its order for dismissal otherwise specifies for good cause shown recited in the order."  *See* § 805.03.  Here, the circuit court found that the DHS had not exhibited any malicious intent and that the second petition was before the court "as soon as possible."

¶55   Second, an NGI committee may file a writ of mandamus, "backed up by contempt," to compel the DHS to comply with WIS. STAT. § 971.17(3)(e).  *See Marberry*, 262 Wis. 2d 720, ¶27; *R.R.E.*, 162 Wis. 2d at 715; *Beyer*, 287 Wis. 2d 1, ¶7.  "Mandamus may issue to compel a public officer to perform a duty of his [or her] office presently due to be performed where there is a clear legal right, a positive and plain duty, substantial damage in the absence of performance,

---

[17] By listing potential remedies, we do not mean to foreclose the possibility of other remedies available to an NGI committee when the DHS fails to comply with the 72-hour requirement.

and no other adequate remedy." ***Marberry***, 262 Wis. 2d 720, ¶27 (quoting ***Pasko v. City of Milwaukee***, 2002 WI 33, ¶24, 252 Wis. 2d 1, 643 N.W.2d 72). "Because [§ 971.17(3)(e)] imposes a mandatory duty upon the department, mandamus to compel performance of that duty is an appropriate and available remedy." *See **id.***, ¶27.

¶56    Lastly, it must be noted that under the facts of this case, the DHS *did* provide the required 72-hour notice to the circuit court when it filed its first petition, whereas in ***Olson***, neither the court nor the SPD had notice of Olson's detention. While Schaefer did not have access to counsel within 72 hours of his detention, a hearing was scheduled within 30 days of his detention because the circuit court was provided notice in compliance with WIS. STAT. § 971.71(3)(e), which then led to the SPD's notice. Schaefer was therefore provided with immediate judicial oversight, and the SPD was given notice prior to the scheduled September 26, 2022 hearing. Thus, the DHS was "expos[ing] itself to an adverse decision from a passive decision-maker," which was not the case in ***Olson***. *See **Olson***, 389 Wis. 2d 257, ¶22.

## CONCLUSION

¶57    In short, we conclude that following a circuit court's dismissal of a petition to revoke an NGI committee's conditional release for lack of competency, WIS. STAT. § 971.17(3)(e) does not require the DHS to release a committee in order for the circuit court to have competency to consider a second petition to revoke that individual's conditional release. The DHS complies with the 72-hour requirement when it, effectively, "re-detains" an NGI committee following the court's dismissal and promptly notifies the SPD and the circuit court of the committee's detention thereafter as required by § 971.17(3)(e). Here, the DHS's

27

second petition complied with the 72-hour requirement because the DHS notified the SPD and the circuit court of Schaefer's detention within 72 hours after the dismissal of the first petition and Schaefer's re-detainer. We therefore affirm the court's order granting the DHS's second petition to revoke Schaefer's conditional release.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.